THOMAS E. PRICE et al., Doing Business as T. E. Price & Company, Appellants, v. Estate of SETH S. BARNES; LAURA BARNES, Executrix.

Division One, July 31, 1923.

1. **OPTION DEALS: Account of Profits and Losses Only: Peremptory Instruction of Lawful Intent: Rule of Exchange.** Plaintiffs, commission merchants, bought and sold grain and cotton for and upon the account of a country merchant and farmer, the book account consisting merely of items of profit and loss, crediting him with the profits when the commodity was re-sold at a price above that at which they had bought it for him, and debiting him with a loss when the commodity was re-sold at a price below that at which they had bought it on his account, no grain or cotton ever being received or delivered. *Held*, in a suit for the balance of the losses shown by the book account, that the court did not err in refusing to give a peremptory instruction declaring that the evidence failed to establish an unlawful intent or purpose on the part of said dealer, notwithstanding there was no affirmative evidence that the contracts of "purchases" and "sales" made by the dealer to which the statute (Sec. 3572, R. S. 1919) would apply were not, by their terms, made in accordance with the rules and regulations of the exchange of which plaintiffs were members, a by-law of which prohibited the "dealing in differences or fluctuations on the market price of any commodity, without a bona-fide purchase or sale of property for actual delivery." Neither the assertion of the parties nor the form of the contracts is conclusive of the character of such transactions; but their nature and the attendant circumstances, particularly the fact that only profits and losses were entered upon plaintiffs' books, and that no grain or cotton was received or delivered, are sufficient to take the question of the dealer's liability to the jury.

2. ————: **Instruction: In Language of Statute: Cured by Others.** An instruction reciting the language of the statute and directing the jury to apply the facts in evidence is never commendable, but where it could not have been misleading or confusing, because the characteristics of the transactions which bring them within the purview of the statute were clearly set forth in other instructions given, it was not reversible error.

3. ———: ———: Gambling and Speculating. All buying and selling is speculation in a sense, and speculation *per se* is not inhibited by the statute; but an instruction telling the jury, without defining the word "gamble" or "speculate," that if the dealer in grain and cotton "intended to speculate in the rise and fall of the market" their verdict must be for the defendant, is not erroneous where it is clear from a reading of it as a whole that the terms "speculation" and "gambling" were used with reference to contracts of purchases and sales made "without any intention of receiving and paying for the property so bought, or of delivering the property so sold."

4. ———: Confined to this State: Suit on Account Stated. In an action on an account stated brought by commission merchants for the difference between losses and profits on the purchases and sales of cotton and grain bought and sold by them for and on account of a resident dealer, to which defendant pleaded that the transactions upon which the account was based were gambling transactions, in that neither of the parties intended the receipt or delivery of the commodity alleged to have been bought or sold, it was not necessary that ilegality should have attached to all the items of the account in order to render the implied promise to pay the balance agreed upon unenforceable; and therefore an instruction telling the jury that if items constituting the account, or any substantial portion of them, originated in gambling transactions, they must return a verdict for defendant, constituted no error, especially where other instructions restricted its application exclusively to purchases and sales made in this State.

5. ———: Pertinent Evidence: Dealer's Financial Ability and Facilities for Handling Commodities Bought and Sold. In an action on an account stated brought by commission merchants for the difference between losses and profits on grain and cotton bought and sold by them for and on account of a dealer, wherein the principal issue is whether such dealer in entering into the contracts purporting to be for the future delivery of the commodities intended delivery in fact or was merely making wagers on the rise and fall of their market price, evidence, offered by defendant in support of the defense that they were gambling contracts, relating to the character of business such dealer was engaged in at his home town and his financial ability and facilities for handling or storing grain or cotton, is relevant, as tending to show his intention in entering into the contracts.

6. ———: ———: ———: Conclusion of Witness. Not every conclusion of a witness is reversible error. The testimony of the

deceased dealer's wife that he was not able to use a hundred thousand bushels of corn should be excluded, upon proper objection, as a conclusion of the witness; but where the jury has before them all the facts as to the character and extent of the dealer's business and his methods of carrying it on, they can judge as well as the witness whether the amounts of grain mentioned could have been reasonably used by the dealer, and it being entirely improbable that such negative conclusions influenced their verdict a refusal to exclude them cannot be held to constitute reversible error.

Appeal from New Madrid Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

AFFIRMED.

*Harry C. Riley, Jr.,* and *Richard A. Jones* for appellants.

(1) By Instruction 9, the court recites portion of language of Sec. 3572, R. S. 1919, having reference to "option dealing," then states to the jury that the transactions therein described are by law declared to be gambling and unlawful, and that contracts made in pursuance thereof are gambling contracts and void and then terminates such instruction by directing the jury that "if you find and believe from the evidence in this case that the account sued upon herein was in fact due by Barnes to the plaintiff, but that the same was gambling and unlawful, as above defined, then plaintiffs cannot recover, and your verdict will be for defendant." The giving of such instruction was without warrant, relegating to the jury the function of the court to determine and apply the law to the facts; in effect reading to the jury the statute and then advising them that if they believed the evidence to include a condition intended to be covered thereby, then their verdict will be in consonance with such conclusion. (3) In Instruction 12 given at the request of respondent, the court charges the jury that "defendant contends that the items of said account were alleged charges growing out of a gambling transaction

as defined in other instructions in this case. You are, therefore, instructed that if you find and believe that said items constituting said account in question, or any substantial part of said items, were gambling transactions and void, then plaintiffs cannot recover in this action and your verdict will be for defendant." (a) Such instruction erroneously leaves the jury to grope through other instructions, a number of them in themselves erroneous, and to guess as to what the law and facts intended as constituting the gambling transaction against which the court here declares. (b) So also does the court err in relating to the jury that defendant contends "that the items of said account were alleged charges growing out of gambling transactions." It is for the court to state the law applicable to the transactions, and not what the parties contend to be such. (c) Likewise does the instruction include within its general terms the purchases and sales of cotton effected on the New York Cotton Exchange; constituting large items in the account for 1917 and 1919. As to such transactions the statute of Missouri could not in any event apply. Edwards Brokerage Co. v. Stevenson, 160 Mo. 516; Hood & Co. v. McCune, 235 S. W. 159. (3) In Instruction 11 given at the request of defendant: (a) The court erroneously tells the jury that if Mr. Barnes intended to speculate with the rise and fall of the market, then to return a verdict in favor of the estate. The statute does not prohibit speculation (R. S. 1919, sec. 3572) in any commodity. The thing prevented is the making of contracts "without any intention of receiving or paying for the property so bought, or of delivering the property so sold." A far cry this from the contracts for purchase and sale for speculative purposes—contracts in which the maker seeks to benefit by rise or fall in the market price of the commodity. Kent v. Miltenberger, 13 Mo. App. 508. (b) So too, this instruction erroneously uses the term "gamble," leaving each juror to his own conception of the facts which he must find from the evidence

in order to justify resolution to that end concerning any transaction involved; indeed, allows of conclusion that the purchase and sale of property for the purpose of speculating in the rise and fall of the market thereof was to be included in such term. (4) Concerning the dealings in grain, both claimants and Barnes were members of the Merchants Exchange during the time of the transactions involved, and during all that period by-laws of such exchange were in force binding upon them as such members, under which delivery by the seller and receipt by the buyer of the commodity contracted for was contemplated upon all transactions therein. The rules of the exchange expressly prohibited all dealings not contemplating delivery and receipt of the product contracted and made provision for discipline including expulsion of members offending against such provision. There is absent from the record proof overcoming the presumption of legal purpose which, in the first instance, attends every transaction, and the instructions of the trial court authorizing the jury to find to the contrary were unwarranted. Hood & Co. v. McCune, 235 S. W. 158; Taylor v. Sebastian, 158 Mo. App. 147; Crawford v. Spencer, 92 Mo. 498; Youtz v. McVean, 202 Mo. App. 377; Williams v. Tiedemann, 6 Mo. App. 269. The court should have given the instruction requested by appellants, directing the jury that the evidence failed to establish unlawful intent or purpose on the part of Barnes in the transactions in evidence, and not to consider defense offered on behalf of the estate to such effect. (5) The action of the trial court in overruling objections of appellants to evidence in effect allowing witnesses by their guesses or opinions to seek to influence the jury to a determination of the existence of illegal intent on the part of Barnes in the transactions involved, was error. The witness Hunter was asked by respondent's counsel, whether Barnes was "in any business where he could use, say, seventy or one hundred thousand bushels of wheat or corn?"

*E. F. Sharp* and *Ward & Reeves* for respondent.

(1)   The alleged "account stated," sued upon herein, based upon the account offered in evidence between deceased Barnes and appellant T. E. Price & Company, growing out of purchases and sales, or pretended purchases and sales, or agreements and contracts for the purchase and sale of cotton and grain, without any intention of receiving and paying for the property so bought, or of delivering the property so sold, and all buying or selling, or pretending buying and selling of such property on margins, or on optional delivery when the party selling same, 'or offering to sell same, does not intend to have the full amount of property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend to actually receive the full amount of the same, if purchased, are by the statutes and law of this state declared to be gambling and unlawful and are thereby prohibited, and it is not necessary that both the buyer and seller shall be guilty.   And any act growing out of such transaction is null and void and not collectible.   Secs. 3566, 3572, 3573, R. S. 1919;   Grain Co. v. Stonebraker, 202 Mo. App. 81; Smith v. Bailey, 200 Mo. App. 627;  Connor v. Black, 119 Mo. 126;  Lane v. Grain Co., 105 Mo. App. 215;  Stewart v. Hutchison, 120 Mo. App. 37; Atwater v. Brokerage Co., 147 Mo. App. 436.   (a)   And these statutes, since the revision of 1889, apply to regular duly organized commission merchants and merchants' exchanges.  Connor v. Black, 119 Mo. 139.   (b)   And such contracts are void against a person who is not a party to them, and even though he acted in ignorance of the fact that the delivery of the commodity so purchased or sold was not intended, and broker or agent is precluded from recovering his commission or money expended under such transaction, since the contract under which his principal acted was void, and no enforcible rights may accrue to any person there-

under. Smith v. Bailey, 200 Mo. App. 635; Stewart v. Hutchison, 120 Mo. App. 37; Connor v. Black, 119 Mo. 126; Edwards v. Brokerage Co., 160 Mo. 516; Atwater v. Brokerage Co., 147 Mo. App. 445. (c). And these contracts and transactions are none the less illegitimate and void because carried on under guise of legitimate trade and under rule of merchants' exchange prohibiting the same. Smith v. Bailey, 200 Mo. App. 631; Erwin v. Williar, 110 U. S. 511. (2) "Puts and calls," which form many large and divers parts of the account sued upon, are gambling transactions, and prohibited by Sec. 3572, R. S. 1919. Lane v. Grain Co., 105 Mo. App. 215; Grain Co. v. Stonebraker, 202 Mo. App. 96; Lumber Co. v. Coal Co., 160 Ill. 97. (3) This being an action on an account stated, if any material part of the items going to make up the account, is illegal and void, then the whole account is void and there can be no recovery. Grain Co. v. Stonebraker, 202 Mo. App. 98; Bick v. Seal, 45 Mo. App. 375; 1 C. J. sec. 311, p. 710; 1 Cyc. 458; Nash Co. v. Wright, 156 Ill. 265. (4) Intention on the part of Barnes to simply settle the difference according to the fluctuations of the market price of the commodity, makes the transaction a gambling one. Grain Co. v. Stonebraker, 202 Mo. App. 92; Lane v. Grain, Co., 105 Mo. App. 218. (5) The fact that a great many deals were made in the case at bar about seven hundred) and no grain received and none delivered in any of the transactions, is sufficient proof that the transactions were gambling and that Barnes did not intend to receive the grain bought or deliver the grain sold., Grain Co. v. Stonebraker, 202 Mo. App. 97; Lamson v. West, 201 Ill. App. 251. (6) The relation of the parties, the business of Barnes, his circumstances and conditions, the sort of business he was engaged in and all circumstances, are competent to show whether or not he intended to receive the commodities bought or deliver the commodities sold. Lane v. Grain Co., 105 Mo. App. 219; Schreiner v. Flack, 55 Mo. App. 406. (7) Appellants had no com-

petent proof that this purported account was stated, or agreed to by Barnes.  The only proof was by complainant's agent, who handled the transaction with Barnes, and since Barnes is dead the agent could not testify, and our objection should have been sustained.   Sec. 5410, R. S. 1919;  Hattersley v. Humes, 193 Mo. App. 120;  Taylor v. Gray, 176 Mo. App. 223;  Williams v. Edwards, 91 Mo. 447;  Snider v. McAtee, 65 Mo. App. 260.

RAGLAND, J.—This proceeding originated in the Probate Court of New Madrid County by the filing therein of a demand, founded upon an account stated, against the estate of Seth S. Barnes, deceased,   The claimants had judgment for the sum of $19,353.20.   On the executrix's appeal the cause was tried *de novo* in the circuit court, and the proceedings there had are presented for review on this appeal.

Plaintiffs were commission merchants engaged for the most part in making purchases and sales of grain, cotton and other commodities for others upon a commission.   They were members of the Merchants Exchange of St. Louis.   Seth S. Barnes, defendant's testate, was also a member of the Merchants Exchange, but he lived in the little town of Marston in New Madrid County, where he conducted a general merchandise business.   He owned about two thousand acres of land and was a director in a local bank.   In connection with his mercantile business he bought grain that was produced in the vicinity of Marston, and operated a cotton gin, ginning about 1,000 bales a year.   The most of this cotton he bought and sold.   His principal business, however, was running his store and operating his farm.

The transactions giving rise to the claimants' suit were alleged purchases and sales of grain and cotton, the former on the Merchants Exchange of St. Louis and the latter on the Cotton Exchange of New York, made for and on behalf of Barnes by plaintiffs as commission merchants.   The book account which plaintiffs kept with

Barnes with reference to these transactions consisted merely of items of profit and loss. In their written demand which is the basis of the action, plaintiffs allege "that by reason of the difference between the price at which said grain and cotton was purchased and sold from time to time resulted profits and losses which claimants received and which they incurred and paid, all at the special instance and request of said Seth S. Barnes and for and upon his account and of the amounts and on the dates stated in the itemized account hereto attached." In other words, when plaintiffs, for example, bought corn for Barnes and advanced money therefor, they did not charge Barnes with either the amount advanced or the purchase price of the corn, but waited until Barnes sold, which he invariably did before the time of delivery, and then debited him with the loss, or credited him with the profit, whichever resulted from the transaction. The items were posted on plaintiffs' ledger in this form: "To loss purchases and sales 80,000 bushels grain, $712.60, com. $50, tax $13.12—$775.62;" "By profit purchases and sale 90,000 bushels grain, $812.50, com. 56.25, tax $12.35—$743."

The ledger account just referred to covers a period beginning December 3, 1915, and ending June 7, 1919. In addition to the items of profit and loss on purchases and sales of grain and cotton there are others of cash paid out and received on the sale of "put and calls." According to plaintiffs' evidence the sales of "put and calls" were made by Barnes personally. They acted with respect to these merely as his financial agent in receiving the proceeds of said sales and in making payments for him on account of them. The account discloses that in the beginning Barnes made considerable money by his "trading," but that later on "the market went against him," and on February 1, 1917, he was indebted to plaintiffs in the sum of $30,697.21. His efforts to meet this indebtedness disclosed great financial embarrassment. Finally, on October 16, 1918, he con-

veyed to plaintiffs 120 acres of New Madrid County land, for which they credited his account with $12,000, but which his executrix now claims was intended by both parties at the time to be in full settlement of the amount that was owing by Barnes.

In January, 1919, Barnes renewed his operations on the Merchants Exchange and so continued until June 7th of that year. On the last-mentioned date, according to plaintiffs' ledger account, the balance due from Barnes was $18,939.67. Plaintiffs' bookkeeper testified that during the running of the account he checked it over from time to time with Barnes, and that the latter assented to its correctness, and this particularly with reference to the balances shown to be due on February 1, 1917, and on June 7, 1919, respectively.

Defendant filed an answer setting up in addition to that of payment the further affirmative defense that the transactions upon which the account was based were gambling transactions, in that, neither of the parties thereto intended the receipt or delivery of the commodities so alleged to have been purchased and sold. On its face the account shows that during December, 1915, and the early part of 1916, Barnes sold through the plaintiffs, and delivered, eight cars of corn and two cars of sunflower seed, but that aside from these, during the period of nearly four years, transactions were had almost daily wherein thousands of bushels of grain and enormous quantities of cotton were purported to have been purchased and sold and in which there was not a bushel of grain or a pound of cotton ever received or delivered.

Over the objection of plaintiffs defendant introduced evidence with respect to the character of business Barnes was engaged in at Marston, tending to show that he did not handle grain and was not equipped for handling it, that there were neither mills for manufacturing it into finished products nor elevators, granaries or other facilities for storing it, that the same was true with reference to cotton, and that he bought and sold only the small

300 Mo.—15

quantities of cotton that came to him from local production for ginning.

Plaintiffs offered in evidence by-laws of the Merchants Exchange which contained the following:

"All deliveries upon cash sales of or upon contracts for grain, unless otherwise expressly provided, shall be made by tender of regular elevator receipts, which have been registered, and which have been issued by such elevators as have been classified as regular by the board of directors. . . .

"Any member of the Exchange engaged in, or who shall be interested or associated in business with, or who shall act as the representative of any organization, firm, or individual, engaged in the business of dealing in differences or fluctuations on the market prices of any commodity, without a bona-fide purchase or sale of property for actual delivery, shall be deemed guilty of unmercantile conduct, and of misconduct as a member of the Merchants' Exchange, and shall be subject to discipline under Section 9 of Rule IV."

Plaintiffs offered an instruction to the effect that the evidence failed to established unlawful intent or purpose on the part of Barnes in the transactions upon which the account in suit was based. This was refused. Thereupon the court at plaintiffs' instance instructed the jury with reference to that issue as follows:

"The court instructs the jury that Seth S. Barnes had lawful right to make purchase of grain, cotton or other commodities under the contracts for delivery at some future date and to make a re-sale of same prior to the time provided under the contract for delivery and had lawful right to make purchases and sales of such commodities or any of them with the intent at the time to make re-sale thereof prior to the date at which delivery was to be made in accord with the terms of contract of purchase, and such fact or facts alone will not render such transaction or transactions in violation of law, unless the jury further find from the evidence at

the time of entering upon the transaction involved, a settled purpose and intent on the part of said Seth S. Barnes to, under no circumstances, accept receipt in case he was purchaser or make delivery in case he was seller of the thing so contracted to be purchased or sold.

"The jury are instructed that unlawful intent or purpose in a transaction is not to be presumed, but the one asserting such unlawful intent or purpose on the part of the other must establish it by a preponderance of the evidence, and in consideration of the contention of the estate of Seth S. Barnes to the effect that he was engaged in and purposed an unlawful act by the transaction described in evidence, the jury will take into consideration in determining whether or not the evidence is of such character as to establish such defense, the presumption in the first instance attaining lawful intent, the place and authority, rules and regulations under and subject to such transactions were had, and all other circumstances in evidence, and upon such consideration unless the jury believe Seth S. Barnes intended in the transactions described in evidence to, under no circumstances, receive or make delivery of the commodity involved, then has the estate failed to establish its defense of unlawful conduct on his part and in such regard.

"The jury are further instructed that the receipt or delivery in case of purchase or sale of grain, cotton or other commodities, of elevator or warehouse receipts, or bills of lading or other muniment of title to the thing involved, for the purpose of transferring title thereto, constitutes a valid delivery thereof to the same intent and purpose as if the thing itself was manually transferred from the possession of one into that of the other.

"The court instructs the jury that the presumption surrounding the conduct of parties to any transaction is that they were engaged with lawful intent and purpose therein, and the burden of proof is upon estate of Seth S. Barnes to establish by a preponderance of evidence the contention that in the transaction involved, he did

not, in any event, or under any circumstances, intend to either receive or make delivery of the products dealt in by him as described in evidence, and unless the jury finds the evidence preponderates to establish such fact, then this will not constitute any defense to claimants' claim.''

For defendant the court gave, among others, the following instructions:

''9. The court instructs the jury that all purchases and sales, or pretended purchases and sales, or contracts and agreements for the purchase and sale of cotton, grain and other agricultural products whatever, either on margin or otherwise, without any intention of receiving and paying for the grain so bought or of delivering the grain so sold, and all the buying or selling or pretended buying or selling of such grain on margin or on optional delivery, when the party selling same, or offering to sell same, does not intend to have the full amount of the property on hand, or under his control, to deliver upon such sale, or when the party buying any of such property, or offering to buy the same, does not intend actually to receive the full amount of the same, if purchased, are, by law, declared to be gambling and unlawful, and any contract or contracts made in pursuance thereof are gambling contracts and void. And if you find and believe from the evidence in this case that the amount sued upon herein was in fact due by Barnes to the plaintiffs, but that the same was gambling and unlawful, as above defined, then plaintiffs cannot recover, and your verdict will be for the defendant.

''10. The court instructs the jury that if you find and believe from the evidence in this case that S. S. Barnes employed the plaintiffs to buy and sell grain for him on the St. Louis Merchants' Exchange, not intending to receive the grain so bought, nor intending to deliver the grain so sold, but only for the purpose of speculating in the future price of such grain; and that it was the intention of said S. S. Barnes merely to receive the profits or pay the losses for the difference in the

prices of such grain bought and sold, and that the account sued for herein is for such differences of price and sum advanced by plaintiffs for losses, and commissions to plaintiffs on such trade, and expenses incurred in connection therewith, then plaintiffs cannot recover in this case and the jury should find for the defendant.

"And the jury are further instructed that in ascertaining the intent of the parties to the contract of purchase and sale mentioned in evidence in this case they are not limited to the assertions of the parties on the one side or the other, but that all the attending circumstances connected with the transactions must be looked into in ascertaining such intent.

"11.   The court instructs the jury that a sale of goods to be delivered in the future may be valid, although the seller has no other means of getting the goods than to go to the market and buy them, but if the real purpose and intention of the parties at the time of making such contract is merely to speculate in the rise and fall of prices of such goods, and it is not intended that the goods are to be delivered, but only the difference paid between the contract and the market price, then such contract is a wager and is void. *And as to contracts made in this State, it is sufficient if either one of the parties to the buying or selling intended to gamble in such transaction or to speculate on the rise and fall of the market, and such intention of either one of the parties renders the contract absolutely void, notwithstanding the other party may be ever so innocent and wholly unaware of the intention to gamble or speculate entertained by the other. And in this case if you find and believe from all the evidence that as to such transactions as took place in this State, said Barnes intended merely to speculate with the rise and fall of the market, then your verdict must be for the defendant, whether you find from the evidence that the plaintiffs knew of such intention or not."*

The court also instructed the jury, by defendant's Instruction 12, that if they found that the items, or a substantial part of them, constituting the accounts between plaintiffs and Barnes were gambling transactions as defined in other instructions, their verdict should be for defendant.

From a judgment rendered on a verdict for defendant plaintiffs prosecute this appeal.

I.    (1)  Appellants' first assignment 'is that the court erred in refusing to instruct the jury that the evidence failed to establish an unlawful intent or purpose on the part of Barnes in the transactions upon which the account in suit was based.  This principally on the ground

Unlawful Intent: No Evidence: Peremptory Instruction. that all the contracts of "purchases" and "sales" shown by the evidence to which our statute (Sec. 3572, R. S. 1919) would apply, that is, those made in this State, were by their terms made in accordance with the rules and regulations of the Merchants Exchange, a by-law of which prohibited the "dealing in differences or fluctuations on the market price of any commodity, without a bona-fide purchase or sale of property for actual delivery," and that there was no evidence showing affirmatively that Barnes's contracts were made in violation of the by-law.  But neither the assertions of the parties nor the form of the contracts is conclusive as to the character of such transactions.  [Smith v. Bailey, 200 Mo. App. 627, 631-3.]  What was said in Irwin v. Williar, 110 U. S. 499, 511, is applicable on the facts of this case: "It might .    .   .   be the case, that a series of transactions, such as that described in the present record, might present a succession of contracts perfectly valid in form, but which on the face of the whole, taken together, and in connection with all the attending circumstances, might disclose indubitable evidences that they were mere wagers.  The jury would be justified in such a case, without other evidence than 'that of the nature and

circumstances of the transactions, in reaching and declaring such a conclusion." The mere form of the bookkeeping by which only profits and losses were entered, in addition to the fact that no grain or cotton with respect to which the contracts of purchases and sales were made was ever received or delivered, was sufficient to take the case to the jury on the question of whether the transactions were bona-fide purchases and sales, or mere wagers on the fluctuations of the market. This assignment is ruled against appellants.

(2) It is contended that the giving of defendant's instruction numbered 9 was erroneous because it simply recited the language of the statute, and then directed the jury to apply its provisions to the facts in proof. This method of instructing juries is never commendable; sometimes it results in positive error. The instruction complained of, however, could not have been misleading or confusing because the characteristics of contracts of purchases and sales which render them gambling contracts within the purview of the statute were so clearly set forth in other instructions. It is not in conflict with those instructions and when read in connection with them may have been of some aid to the jury in determining the issue submitted under it.

*Instruction in Language of Statute.*

(3) The portion of defendant's instruction numbered 11 which we have italicized is criticized on two grounds. First, that it told the jury that if Barnes intended to speculate on the rise and fall of the market, then they should return a verdict for defendant; and, second, that it left to each juror to determine for himself without any direction from the court, what was meant by the term "gamble." Practically all buying and selling is speculation in a sense, and speculation *per se* is not within the inhibition of the statute. When the whole instruction is read, however, it is very clear that the terms "speculation" and "gambling" were used with reference to con-

*Speculation and Gambling.*

tracts of purchases and sales made "without any inten-
tion of receiving and paying for the property so bought,
or of delivering the property so sold," and must have
been so understood by the jury.

(4). There was perhaps no evidence that would
have justified a finding that both parties to the cotton
transaction did not intend receipt or delivery of the com-
modity which they pretended to buy and sell, and which
would have been necessary in order to have reached the
conclusion that such contracts were
wagering contracts at common law. By
Instruction 12 the jury were told that
if the items constituting the account,
or any substantial part of them, originated in gambling
transactions, as defined in other instructions, they should
return a verdict for defendant. Appellants complain
that this language was broad enough to include the trans-
actions had on the New York Cotton Exchange with
respect to which the Missouri statute is without applica-
tion. It is true that gambling transactions were defined
in defendants instruction numbered 9 in the general terms
of the statute without limiting their application to con-
tracts made in this State. But in defendant's instruc-
tions numbered 10 and 11 the facts hypothesized as con-
stituting wagers referred exclusively to purchases and
sales made on the Merchants Exchange of St. Louis and
to contracts made in this State. And in plaintiffs' in-
structions an unlawful intent on the part of Barnes only
was treated as sufficient to render the contracts void,
regardless of where made. Neither party asked an in-
struction by which the jury would have been advised as
to the distinction between Missouri contracts and New
York contracts with respect to the rules to be applied in
determining whether the one or the other were gambling
contracts. For the purposes of the case the distinction
was not important. The suit was on an account stated and
it was not necessary that illegality should have attached
to all of the items constituting the account in order to

*Action on Account Stated: Transactions Outside of State.*

render the implied promise to pay the balance agreed up-
on unenforceable. [Grain Company v. Stonebraker, 202
Mo. App. 81, 99.] Appellants' criticism is too tenuous
to merit serious consideration.

II.    The evidence offered by defendant as to the
character of business Barnes was engaged in at Marston,
his financial ability and his lack of facilities for handling
or storing grain or cotton was all objected to by plain-
tiffs on the ground that it was irrelevant to any issue in
the case.    The principal issue was whether Barnes in
entering into the contracts purporting to be for the fu-
ture delivery of commodities intended delivery in fact,
or whether he was merely making wagers on the rise or
fall of the market.    The evidence objected to was com-
petent as tending to show his intention in that respect.
"The facts  .  .  .  that a party to a future contract is
not financially able to pay for the commodities for which
he has contracted to buy, or that he has no means with
which to buy the commodities which he does not own
and which he has contracted to sell, or that he is not a
regular dealer in the commodity and has no means or
facilities for taking, handling or storing it, are evidence
tending to show that the intention of the parties is to
gamble." [27 C. J. 1065.]
Defendant asked one of her witnesses this question:
"Was he [Barnes] in any business where he could use,
say, seventy or one hundred thousand bushels of wheat
or corn?" The answer was: "No, sir; not that I know
of." A similar question propounded to another witness
elicited a like answer.    Plaintiffs objected to each ques-
tion on the ground that it called for the conclusion of the
witness.    The objections should have been sustained.
However, the jury had before them all the facts as to
the character and extent of Barnes's business and his
methods of carrying it on and could judge as well as the
witnesses whether the amounts of grain mentioned could
have been reasonably used in connection with such busi-

ness. It is therefore highly improbable that they were influenced to any extent by these negative conclusions of the witnesses. For that reason we do not regard the error in admitting the evidence as sufficiently harmful to call for a reversal of the judgment.

The record disclosing no reversible error the judgment is affirmed. All concur.