**H. H. HODGSON, Plaintiff-Respondent,**

**v.**

**E. C. PIXLEE, Defendant-Appellant.**

No. 44305.

Supreme Court of Missouri.

Division No. 1.

Nov. 8, 1954.

Simrall & Simrall, James S. Simrall, Jr., Julia C. Simrall, Liberty, for respondent.

VAN OSDOL, Commissioner.

This is an action on a promissory note. Defendant interposed the defenses of limitation of actions, Section 516.110 RSMo 1949, V.A.M.S., and illegality of consideration. Judgment was rendered plaintiff for $15,000 in accordance with a jury's verdict. Defendant has appealed.

Herein upon appeal defendant-appellant contends the trial court erred in refusing to sustain defendant's motion for directed verdict. Defendant-appellant asserts that the evidence shows the note was given for and in consideration of obligations incurred in gambling transactions; and, moreover, that the defenses, limitation of actions and illegality of consideration, stood admitted by the pleadings, inasmuch as plaintiff did not file a reply to these new matters alleged in defendant's answer in defense of plaintiff's claim. Defendant-appellant also contends the trial court erred in giving plaintiff's Instructions Nos. 1 and 3.

Plaintiff instituted this action August 28, 1942. Plaintiff alleged that defendant had executed the note (due five months after date), originally in the principal amount of $18,000, to Hodgson-Cauthorn Grain Company as payee on July 1, 1931; that no payment, except $2,573.74 (on August 31, 1932), has been made on the note; and that plaintiff had become the transferee and owner of the note for value and was entitled to payment of the amount due thereon.

As we have said, defendant, by answer set up the Statute of Limitations as a defense; and he further alleged that he had never, by himself or by another, authorized any payment or credit on the note. Defendant also alleged the indebtedness of defendant to the payee named in the note was incurred in or grew out of gambling transactions. It was stated that Hodgson-Cauthorn Grain Company, payee, claimed or pretended to be engaged in the business of dealing in grain and grain futures for

Francis G. Hale, Robert E. Coleberd, Liberty, for appellant, Arthur R. Kincaid, Lawson, Hale & Coleberd, Liberty, of counsel.

itself and as a broker on commission for others, on boards of trade at Kansas City and elsewhere; and that Company, as agent or as principal, pretended to buy and sell, and went through the form of buying and selling for defendant and others, grains and other commodities, but in which pretended transactions there was in fact no actual purchase and sale, but the transactions were wholly fictitious; that in these transactions defendant, when purportedly selling, did not intend to have on hand or under control the grains to be delivered to close the pretended sales, nor did defendant, when purportedly buying, intend to actually receive the amount of grain ostensibly bought in the pretended purchases; that defendant was gambling on the rise and fall of market prices without any intention of receiving or delivering the grain which he pretended to buy or sell; that defendant intended to settle his gains and losses as the price of the grain was determined in the future market; and that, inasmuch as the alleged indebtedness constituting the consideration for the note was made up in aggregate wholly of items growing out of these transactions, the note was and is therefore illegal, invalid and void.

Plaintiff introduced evidence tending to show that, in 1931 he was the majority stockholder and president of Hodgson-Cauthorn Grain Company, and was engaged in the grain brokerage business in Kansas City; and that on July 1, 1931, defendant was indebted to the Company for items incurred in defendant's purchases (and sales) of grains on margin through Company.

Plaintiff testified that he had personally made Company's endorsement of the credit shown on the note, and that he was authorized by defendant personally to make the endorsement. Plaintiff testified the amount of the credit ($2,573.74) was an amount due defendant on the books of Company on the stated date.

Plaintiff further testified that Company, acting as broker, had dealt with defendant over a period of years; that the deals with defendant were in "futures and cash" and that all of the transactions involved were made in Missouri. "I would go in and buy for his account or I would sell for his account." Plaintiff further testified that Company did not possess the grain which defendant had ordered through Company, but that upon receiving defendant's order Company would buy the grain "from somebody else" for future delivery in compliance with the order—

"Q. * * * Now, at the time he (defendant) gave you those orders, say for 10,000 bushels of wheat or corn, or whatever it was, you didn't have that kind of commodity on hand, did you, your company? A. No, but the fellow that sold it has the commodity.

"Q. Yes. A. That he would deliver at the proper time. * * *

"Q. In other words, Mr. Pixlee was, if he bought December corn in July, or August, or September— A. Yes, sir.

"Q. —he was hoping that the price would rise and he could get out of it with a profit? A. Well, I don't know what was in his mind. He knew that if he bought that December corn and waited until December, he would get delivery in some public elevator, and what he was going to do with it I couldn't say."

Plaintiff said he did not know whether defendant intended to accept delivery of the grains he had ordered, and was not sure defendant had ever asked for delivery. "I am inclined to think that he has taken delivery and sold it out afterwards, and I couldn't say for sure." Company made advances to protect its customer, defendant. Company charged a commission for buying and selling the commodities. These advances and commissions constituted the consideration of the note.

Plaintiff testified that he had frequently contacted defendant "about payment", before plaintiff instituted the action. Defendant "indicated that he was trying to raise the money." Plaintiff also introduced

into evidence a schedule of a petition in bankruptcy subscribed and sworn to and filed by defendant, June 8, 1936, in which schedule there was listed an unsecured indebtedness to "Hodgson Cauthorn Grain Company, * * * Note $15,000."

As stated, defendant admitted signing the note, but denied that he at any time authorized the credit shown thereon. He testified, as he had alleged, that in various transactions through Company he was not buying or selling grain for delivery but was "dealing in margins" and "buying on ·futures"; that during the times of all of his transactions with plaintiff's Company he had never accepted or received a delivery of grain purchased and had never made a delivery of grain sold; and that he had never intended to do so. But if he "hadn't sold it", he would have got delivery of it. He testified that he had signed the note at the request of plaintiff for plaintiff to use as collateral for a loan to be obtained by plaintiff.

Defendant further testified that plaintiff had never demanded payment of the note, and that the first intimation to defendant that plaintiff considered him to be legally obligated was the service of process notifying him of the institution of the instant action.

■ In Missouri, early decisions relating to transactions purporting to be purchases and sales for future delivery followed the common law rule that contracts for the sale of commodities to be delivered in the future were valid where the parties, or either of them, actually contemplated a delivery of the property, even though the seller did not have the commodities nor any other means of getting them than to go into the market and buy them. Cockrell v. Thompson, 85 Mo. 510; Crawford v. Spencer, 92 Mo. 498, 4 S.W. 713; Kent v. Miltenberger, 13 Mo.App. 503. See now § 523(1), Restatement, Contracts, stating, "A bargain purporting to be for purchase and sale is a wager if it is a part of the bargain that no actual delivery of the subject matter shall be made, and that settlement between the parties shall be made on the basis of differences in market prices. But an undisclosed intention of one or both parties to a bargain does not invalidate it." However in 1889, the common law rule was changed in Missouri by legislation, now §§ 563.530 and 563.540 RSMo 1949, V.A.M.S., so that at this time the last sentence (only) of the quotation from Restatement, supra, is not in harmony with the law of Missouri. In our State, it is now held that, if it is the intention of *either* of the parties to a buying and selling contract not to deliver or receive the commodity purportedly purchased or sold but to speculate on the rise or fall of its market price, the contract is a wager and void, although " 'the other party may be ever so innocent and wholly unaware of the intention to gamble or speculate entertained by the other.' " Price v. Barnes' Estate, 300 Mo. 216, 254 S.W. 33, 36. See also Connor v. Black, 119 Mo. 126, 24 S.W. 184; Gordon v. Andrews, 222 Mo. App. 609, 2 S.W.2d 809; Claiborne Commission ·Co. v. Stirlen, Mo.App., 262 S.W. 387; Elmore-Schultz Grain Co. v. Stonebraker, 202 Mo.App. 81, 214 S.W. 216; Smith v. Bailey, 200 Mo.App. 627, 209 S. W. 945; Annotation 83 A.L.R. 522 at pages 548–552.

■■ In the instant case, the execution of the note was admitted by defendant. The note on its face showed that it was barred by the Statute of Limitations; but the instrument itself bore an endorsement of a timely payment which, if authorized by defendant, would prevent the bar of the Statute of Limitations. In this situation, the burden of proving that the credit on the note was made with defendant's authorization was on plaintiff. Locke v. Warden, Mo.App., 179 S.W.2d 624; 54 C.J.S. Limitations of Actions, § 389, pp. 529–530. There was substantial evidence, although contradicted, that defendant had authorized the credit. It was the jury's province to resolve this issue on the conflicting evidence.

■ Defendant, as stated, interposed the further defense of illegality of consideration. He alleged the note grew out of gambling transactions. Defendant had the

burden of proof on this issue. Price v. Barnes, supra; Gordon v. Andrews, supra; Claiborne Commission Co. v. Stirlen, supra; Kent v. Miltenberger, supra. In speaking of the burden of proof we are referring to the burden of convincing the jury, that is, defendant in interposing the defense of "gambling or gaming transactions" had the risk of jury nonpersuasion on that issue. We may assume that the evidence introduced would have been sufficient to support a finding that one or another of the parties to the original transactions never intended the grain, purchased or sold by defendant through Company as broker, was to be delivered or received by defendant; but plaintiff's evidence did not demonstrate that any one of the parties never so intended, and the jury was not obliged to believe defendant's testimony. And there was evidence tending to show that defendant had acknowledged the indebtedness, recognizing the note as a valid obligation; and had never asserted its invalidity, until his answer was filed in the instant action.

Section 509.010 RSMo 1949, V.A.M.S., provides there shall be a petition and answer; and there shall be a reply, if the answer contains a counterclaim. The Section was a part of the Civil Code of Missouri, enacted in 1943, L.1943, p. 353 et seq., and effective January 1, 1945. Section 3 of the Code, L.1943, p. 357 V.A.M.S. note preceding section 506.010, provided that the Code should govern all proceedings in actions brought after its effective date "and also further proceedings in all actions then pending", except as the court should be of the opinion the application of provisions of the Code in a particular action pending would not be feasible or would work injustice. In the instant case there was no counterclaim and the trial court made no order requiring the filing of a reply. The trial of the cause, including the presentation of evidence and the submission of the issues to the jury, was as if the new matters pleaded in the answer were denied. Even before the effective date of the Civil Code of Missouri, it was ruled that where no objection was made to the failure of plaintiff to file a reply and a cause has been tried as if new matter set up in the answer had been denied, the failure to file a reply is deemed to have been waived by defendant. Goslin v. Kurn, 351 Mo. 395, 173 S.W.2d 79; Von Eime v. Fuchs, 320 Mo. 746, 8 S.W. 2d 824.

We believe the trial court did not err in overruling defendant's motion for a directed verdict.

■ The trial court at plaintiff's instance gave Instruction No. 1 as follows,

"The Court instructs the Jury that the execution of the note by the defendant is admitted, and, if you find and believe that the credit shown on said note was authorized by the defendant, then the burden of proof of all other issues in said case is on the defendant to prove by a preponderance of the credible evidence in the case.

"By the term 'preponderance of the evidence' is meant the greater weight of credible evidence; and if the jury believe that the greater weight of the credible evidence is on the side of the plaintiff, or if the testimnoy is of such a character, or so evenly balanced, that the jury are unable to determine on which side the greater weight of it actually is, then in either such event the verdict will be for the plaintiff."

Defendant-appellant contends this instruction cast the burden of proof on defendant and was erroneous "for the reason the burden of proof is always on the plaintiff in any action to prove the facts that will warrant a recovery." Defendant-appellant says that the burden of proof cast on plaintiff never shifts during the course of the trial, and that the law is well established in this State that an instruction which puts the burden of proof on the wrong party is prejudicially erroneous. In addressing ourselves to this contention, we say the burden of proof (as distinguished from the burden of evidence or the burden of going forward with the evidence) in any case rests upon the party, plaintiff or

defendant, who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue—the burden of proof so remains until the termination of the case. Galloway v. Galloway, Mo.Sup., 169 S.W. 2d 883, and cases cited therein; 20 Am. Jur., Evidence, § 135, p. 138. We have hereinbefore noticed the burden of proof to be carried by the parties on the respective issues as raised by the pleadings in this case. It is precisely true that—the execution of the note having been admitted by defendant, and "if the credit shown on said note was authorized by the defendant" as the instruction hypothesized—the burden of proof on all other issues was on the defendant. We have also noticed Instruction No. 6 given by the trial court at defendant's instance which instruction was as follows,

"The court instructs the jury that the burden of proof is on plaintiff to prove by a preponderance of the credible evidence in the case that on the 31st day of August, 1932, the defendant actually paid or voluntarily and knowingly caused to be paid the sum of $2573.74 on the note in suit; and unless plaintiff has so proven by a preponderance of the credible evidence, your verdict must be for defendant.

"In this connection you are further instructed that if you find the evidence preponderates in defendant's favor as to such alleged payment or if you find that the evidence thereon is evenly balanced as between plaintiff and defendant, then your verdict must be for defendant."

These two instructions, considered together, correctly advised the jury relating to the burden of proof on the respective issues, in our opinion.

Defendant-appellant also contends Instruction No. 3, given at plaintiff's request was prejudicially erroneous. The instruction was as follows,

"The jury are instructed that they are the sole judges of the weight of the evidence and of the credibility of the witnesses, and the jury may give to the testimony of each witness such weight as they deem that it is entitled to under the facts and circumstances in evidence, and in determining what weight they will give to the testimony of any witness or witnesses the jury are not confined alone to the statement or statements of the witnesses, but the jury may take into consideration their own experience and observation in the common affairs of life."

Contrary to defendant-appellant's contention, we believe the instruction did not authorize the jurors to take into consideration their own experience and observation in the common affairs of life and to "rove beyond the scope of evidence" in determining the factual issues of the case without "any regard to the evidence" introduced. The instruction did not tell the jurors they were to disregard the evidence or the testimony of a witness, nor did it authorize them to go afield in resolving the factual issues of the case. The instruction advised that the jurors' "own experience and observation" might be taken into consideration "in determining what *weight* they will give to the testimony of any witness or witnesses." Compare State ex rel. State Highway Commission v. Stoddard Gin Co., Mo.App., 62 S.W.2d 940.

The judgment should be affirmed.

It is so ordered.

LOZIER, and COIL, CC., concur.

All of the Judges concur.